

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0471-23

**JOHN PAUL CRUMLEY, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## COLLIN COUNTY

KELLER, P.J., delivered the opinion of the Court in which YEARY, KEEL, SLAUGHTER and MCCLURE, JJ., joined. NEWELL, J., filed a concurring opinion in which HERVEY, RICHARDSON and WALKER, JJ., joined.

### OPINION

At issue here is the admissibility of expert testimony that Appellant has autism spectrum disorder. The question is whether the testimony that Appellant proffered directly rebuts either of the *mens rea* elements of belief about underage status and intent to engage in sexual conduct that the

State was required to prove for online solicitation of a minor.[1]  We conclude that the proffered testimony did not rebut either of these *mens rea* elements, and it was therefore inadmissible.

## I. BACKGROUND

### A. Trial

#### 1. *Admitted Testimony*

This case involves online discussions between Appellant and an undercover police officer who pretended to be a 13-year-old girl, "Alyssa."  The officer, Detective Lee McMillian, represented himself at the beginning of the conversation to be thirteen years old.   Detective McMillian had expertise in imitating how a 13-year-old girl would talk and dropped various clues in the conversation, such as references to being in school.  Appellant's statements soon became romantic and sexual, and he ultimately solicited a meeting with "Alyssa" for the stated purpose of having sex.  When met instead by the police, Appellant made statements indicating that he intended to warn the girl (or a neighbor who brought her) about the dangers of meeting strangers on the internet.

At trial, Appellant testified that he did not believe that the person he was talking to was a 13-year-old-girl.  He claimed that he thought the person was lying about who she was and that he at first believed that "Alyssa" was a young man but later concluded that she was a middle-aged woman.  Appellant claimed that he had no intention of having sex with "Alyssa" but engaged in sexually-tinged communications with the intent of exposing "her" as a liar.  Appellant said that he was motivated to do this because he was upset about two past experiences in which he had been a victim

---

[1]  See TEX. PENAL CODE §§ 33.021(a)(1)(B) ("'Minor' means . . . an individual whom the actor believes to be younger than 17 years of age"), (c) ("A person commits an offense if the person, over the Internet [or]by . . . text message . . . knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.").

of "catfishing" (being misled online by someone claiming to be what she was not). Appellant testified that he was stubborn and that he was not particularly good at picking up social cues. He also admitted that this expose-a-liar scheme was, in retrospect, "stupid." He claimed that he told the police that he would warn the girl of the dangers of meeting strangers only because the police lied to him about there being a real girl and this lie "flipped [his] world." He also claimed that he tried to tell the police that he thought he was being messed with but that they did not want to hear it.

Appellant also introduced the testimony of a woman who was one of the "catfishers" he had described. She admitted that she had engaged in long-term communications with Appellant and misled him about her identity.

### 2. *Excluded Testimony of Appellant's Brothers*

Appellant sought to introduce the testimony of his two brothers, Jay and Jason, but the trial court excluded this evidence as character evidence relevant only to punishment. Outside the presence of the jury, the brothers testified about Appellant's background and his personality.

Jay testified that Appellant was "different" and did "not act like most people," that he missed "signals" that "most of us pick up on," that he was legally blind and obtained his first drivers' license at age 39 or 40, that he married his first girlfriend and later divorced, and that he had two online relationships with women who "catfished" him. Jay also testified that Appellant was gullible at times, but when he "knows something, he knows. He goes headlong. . . . [I]f he is the expert in it, he is the expert in it, you know, and . . . I'm not going to be able to change his mind."

Jason testified that Appellant was intelligent "but just didn't catch on to the . . . unwritten social rules." He said that Appellant was a target when he was young because he was legally blind. Jason testified that, when playing games in a social setting, Appellant was fixated on winning. "If

he didn't win, he didn't want to necessarily play." He said that Appellant had an easy time with technology because he did not have to "read any kind of social cue." Jason said that when Appellant got in online relationships, "all of us kind of tried to point out some red flags." But once Appellant "had formed an opinion, and no matter what we had had to say about it, he stayed on that track." When Appellant found out that the first woman "catfisher" was lying to him, "[i]t shook him pretty well" and was "a pretty big letdown." When asked by the prosecutor if Appellant was a "gullible" person, Jason said "that he forms his opinions early on based on what he deems to be credible."

### 3. *Excluded Expert Testimony*

The trial court excluded the testimony of the autism experts on the basis that it did not rebut *mens rea* but was instead inadmissible diminished capacity evidence. The autism experts testified about Appellant having autism, talked about various characteristic of autistic people and Appellant displaying these characteristics, and expressed the opinion that Appellant believed he was not talking to a 13-year-old chid.

Specifically, Dr. Joshua Masino, a clinical psychologist with a specialization in neuropsychology, testified that he conducted diagnostic testing and a clinical interview with Appellant. Dr. Masino believed that Appellant suffered from autism spectrum disorder, level one, without intellectual impairment. Dr. Masino said that an individual with that diagnosis would have difficulty understanding another person's perspective and would engage in rigid thinking. He testified that such a person tends to get fixated on things and caught up in details, which negatively affects his ability to see the bigger picture. Dr. Masino also explained that such a person was at higher risk of being taken advantage of and of putting too much emphasis on the short term without considering long-term implications.

Dr. Masino also testified that Appellant's autism would have caused him to refuse to see any signs that conflicted with his belief that the person he was communicating with was an adult male:

> When John approached this chat, okay, he perceived that it was actually an adult male. That was his perspective. So, if we say that the other individual was purporting that they are a 13-year-old female, that's not – he's incapable of seeing that perspective. . . . So when John has the perception that it is a 17-year-old male on the other side of, say, a tablet or computer screen, his behavior and thoughts and emotions are going to be driven by that, and he's incapable or has significantly more difficulty shifting off of that.

Defense counsel asked if Appellant's text messages were consistent with that conclusion, and Dr. Masino replied, "Yes." Dr. Masino affirmed that it would be consistent with autism for a person to ask questions to "try to prove their theory" and to ignore other evidence or answers.

Defense counsel asked if Dr. Masino's abstract testimony about autism was consistent with his evaluation of Appellant, and he said, "Yes." He explained that his interaction with Appellant revealed that Appellant had "a lack of social cognition" and that the dependency in his behavior was "highly evident throughout the transcript of the texts."

On cross-examination, Dr. Masino testified that Appellant's impulse control was not impaired but that his decision-making was. The expert admitted that his conclusion that Appellant believed "Alyssa" was in fact a 17-year-old male was based on Appellant's self-reporting. The prosecutor also asked, "Is there anything in any of those chats that indicate at all that the defendant believed that this was a 17-year-old male that he was talking to?" Dr. Masino answered, "No."[2]

But Dr. Masino confirmed that, if permitted, he intended to testify that it was his opinion that Appellant did not believe that the person he was communicating with was a female child. The

---

[2] Dr. Masino also testified that validity measures indicated that Appellant was being truthful. The prosecutor pointed to the impropriety of testifying whether someone has been truthful, and the expert responded that he was simply talking about validity measures.

prosecutor asked if that was based on Appellant's self-reporting, and Dr. Masino responded that it was, but it was also based on evidence associated with Appellant's autism diagnosis. When asked, "What else is there that's going to allow you to testify about the defendant's belief besides his own words to you," Dr. Masino responded, "Nothing other than the interaction that I've had with him."

Because the court of appeals did not address the admissibility of the testimony of the other autism expert—Dr. Annette Jerome—we do not detail that testimony.

## B. Appeal

The court of appeals concluded that the brothers' and Dr. Masino's testimony "was relevant to rebut the *mens rea* element of whether appellant knowingly solicited someone he believed to be a minor with the intent that the minor engage in sexual activities."[3] The court concluded that, like the defendant in *Ruffin*,[4] "appellant offered evidence that his perception of the world was affected by autism, which may be probative of whether he believed Alyssa was a minor and whether he intended to engage her in sexual activities."[5] Recognizing that an appellate court "may affirm a trial court's ruling if it is correct on any legal theory applicable to the case," the court of appeals then conducted a Rule 403 analysis.[6]

The court of appeals concluded that the exclusion of the brothers' and Dr. Masino's

---

[3] *Crumley v. State*, 670 S.W.3d 799, 807 (Tex. Crim. App. 2023).

[4] *Ruffin v. State*, 270 S.W.3d 586, 595 (Tex. Crim. App. 2008).

[5] *Crumley*, 670 S.W.3d at 807.

[6] *Id.* at 807-08. The court declined to pass on the admissibility of Dr. Jerome's testimony. *Id.* at 808 n.1.

testimony was constitutional error.[7] The court concluded that the error was constitutional because the exclusion of the evidence "effectively prevented appellant from presenting his defense."[8] The court acknowledged that Appellant was able to present evidence that he was not good at social interactions, that he had been catfished once and suspected it had happened again, and that he firmly believed that "Alyssa" was in fact an adult.[9] But the court of appeals concluded that he "was unable to fully develop his defensive theory" because he could not inform the jury that autism caused him extreme difficulty in changing his mind that he was talking to an adult and because he could not present evidence that autism made it difficult for him to imagine how others might perceive the situation of chatting online with someone who purported to be a 13-year-old.[10] Under the harm standard for constitutional error, the court of appeals held that it could not conclude that the exclusion of the evidence did not contribute to Appellant's conviction.[11] Consequently, the court of appeals reversed the judgment of the trial court and remanded the case for a new trial.[12]

## II. ANALYSIS

In *Ruffin*, the defendant was charged with aggravated assault for shooting at police officers.[13] He wanted to introduce evidence that his severe delusions made him believe that he was shooting

---

[7] *Id.* at 808.

[8] *Id.*

[9] *Id.* at 809.

[10] *Id.*

[11] *Id.*

[12] *Id.* at 810.

[13] 270 S.W.3d at 587.

at Muslims instead of at police officers.[14]  In considering whether the evidence was admissible, we

noted that, by statute, Texas has codified a defense of insanity.[15]  But we said that, because the Texas

Legislature had not enacted any affirmative defenses based on mental disease, defect, or abnormality

*other* than insanity, no such defenses existed.[16]  We explained that "diminished responsibility" or

"diminished capacity" defenses, "if allowed, would permit exoneration or mitigation of an offense

because of a person's supposed psychiatric compulsion or an inability to engage in normal reflection

or moral judgment."[17]  But we explained that "both physical and mental diseases or defects may

affect a person's perception of the world just as much as they may affect his rational understanding

of his conduct or his capacity to make moral judgments."[18]

To illustrate how a physical defect could affect a person's perception of the world, and in

doing so, affect his criminal culpability, we offered the example of a blind person who shoots at

someone he believes to be a trespasser but who is in fact a police officer.[19]  The shooter would not

be guilty of knowingly assaulting a *police officer* if he did not know the person was a police officer

because, due to his blindness, he did not see the officer's uniform.[20]  We further explained that a lay

---

[14]  *Id.*

[15]  *Id.* at 592 & n.14 (citing TEX. PENAL CODE § 8.01).

[16]  *Id*. at 593.

[17]  *Id.*

[18]  *Id.*

[19]  *Id.* at 593-94.

[20]  *Id.* at 594.

or expert witness could testify about this hypothetical defendant's blindness.[21]  And we said that courts "routinely admit evidence of a physical abnormality offered to prove a lack of *mens rea*."[22]

We then explained that, in Texas, "the same rule applies to evidence of a mental disease or defect offered to rebut or disprove the defendant's culpable *mens rea*."[23] "If, instead of blindness, the defendant suffers from mental delusions so that he sees a 'trespasser' or a 'Muslim' when everyone else around him sees a police officer, he cannot be convicted of intentionally shooting at a police officer, although he may be convicted of intentionally shooting at a trespasser or Muslim."[24] Consequently, we held that "both lay and expert testimony of a mental disease or defect that directly rebuts the particular *mens rea* necessary for the charged offense is relevant and admissible unless excluded under a specific evidentiary rule."[25]  We also said, though, "Such evidence may also be excluded if it does not truly negate the required *mens rea*."[26]

The State contends that Appellant's proposed expert testimony on autism did not satisfy the *Ruffin* requirement of directly rebutting or truly negating *mens rea*.  We agree.  Unlike the blindness example or the psychotic-episode evidence in *Ruffin*, there was no evidence that a person having the type of autism attributed to Appellant would be incapable of perceiving a fact (e.g., a person's age) crucial to *mens rea*.  As the State pointed out in oral argument, there was nothing  to suggest, for

---

[21]  *Id.*

[22]  *Id.*

[23]  *Id.*

[24]  *Id.*

[25]  *Id.* at 588.

[26]  *Id.* at 596.

example, that a person with Appellant's alleged level of autism could not believe he was communicating with a minor. As the State further pointed out, autism could be said to have impacted Appellant's judgment on whether it was a good idea to try to expose a liar online, his judgment on what type of person to select to expose (e.g., someone claiming to be a young, single adult as opposed to claiming to be a child), and his ability to handle the emotional pain from being "catfished." But none of these sorts of impacts directly rebuts or truly negates *mens rea*. At best, the autism evidence here simply provided context for an offense or otherwise explained decisions collateral to the formation of the actor's mental state. And we agree with the State that "almost any mental health concern could shed light on the defendant's mental state that day" and that broadly allowing mental-illness-or-defect evidence to set the context for a defendant's decisions would result in "little or no limit to the admission of such evidence." We should carefully scrutinize mental-illness-or-defect evidence because "[p]sychiatrists are capable of supplying elastic descriptions of mental states that appear to but do not truly negate the legal requirements of mens rea."[27]

It is true that Dr. Masino expressed an opinion that Appellant believed that the person he was communicating with was a 17-year-old male rather than a 13-year-old female. But he never explained how autism would cause Appellant to arrive at such a belief. He never said, for example, that an autistic person would think that only people 17 and older communicate online, or that Appellant's manifestation of autism would make him think that. As the State explains, the evidence would at best, suggest that autism made Appellant "incapable of re-evaluating his claimed non-criminal belief and intent." And Dr. Masino's opinion about what Appellant believed relied almost

---

[27] *United States v. Bennett*, 161 F.3d 171, 184 (3d Cir. 1998) (quoting *United States v. Pohlot*, 827 F.2d 889, 890 (3d Cir. 1987)).

exclusively on Appellant's own self-reporting. Such reliance implicates the rule against directly commenting on a witness's credibility.[28] We conclude that the trial court properly excluded all of Dr. Masino's testimony.

Turning to the rest of the excluded testimony, we note that the State has not specifically complained about the court of appeals's holding regarding the exclusion of the brothers' testimony, except to the extent that it might be about or relate to autism. But whether the brothers' testimony would have been admissible without the expert autism evidence is something the court of appeals can decide on remand. Also, while our holding with respect to the admissibility of Dr. Masino's testimony will have implications for the admissibility of Dr. Jerome's testimony, the court of appeals has not addressed the latter expert's testimony, and we leave it to that court to do so on remand.

The judgment of the court of appeals is reversed and the case is remanded for proceedings consistent with this opinion.

Delivered: August 21, 2024
Publish

---

[28] *See Schutz v. State*, 957 S.W.2d 52, 68 (Tex. Crim. App. 1997) (extending our bar against direct testimony that a child is not lying to direct testimony that a child is not "fantasizing" and explaining that "the concept of truthfulness properly includes mental capacity as well as moral disposition").